# STATE OF VERMONT

# ENVIRONMENTAL COURT

Appeals of Garen     }
            }
            }  Docket Nos. 42-3-01 and
            }  218-9-00 Vtec
            }
            }

## Decision and Order on Appellee-Applicants' Motion to Amend Statement of Questions

Appellants David and June Garen appealed from two decisions of the Development Review Board (DRB) of the City of Burlington granting preliminary plat approval (Docket No. 218-9-00 Vtec) and final plat approval (Docket No. 42-3-01 Vtec) to Appellee-Applicants Green Mountain Habitat for Humanity, Inc. and Burlington Housing Authority. The two appeals were consolidated, and Appellants recognized that the preliminary plat appeal was essentially moot and that the matter was to proceed as an appeal of the final plat approval. The original appellants withdrew and, after appeal to the Supreme Court, the Intervenors Katherine W. Desautels (formerly Gluck) and John Desautels were allowed to continue with the appeal, but only on the issues timely raised by the original appellants. By agreement of the parties, the matter has remained with the original caption.

Appellee-Applicants are represented by Neil H. Mickenberg, Esq.; the City is represented by Joseph E. McNeil, Esq. and Kimberlee J. Sturtevant, Esq.; Intervenors Katherine W. Desautels and John E. Desautels are represented by Michael J. Straub, Esq. By entry order dated September 10, 2002, the Court changed the party status of two other individuals (Lorraine Gorton and Jeffrey Landa) who had originally entered their appearance as interested persons but who had not appeared at pretrial conferences nor otherwise participated, so that they would receive notices for their information but would not be expected otherwise to participate.

Appellee-Applicants have now moved to amend the statement of questions on appeal, based on requests to admit and answers to interrogatories filed by the original appellants before they withdrew. Intervenors agree that some of the questions are eliminated, but oppose the amendment of others, and argue generally that Appellee-Applicants are out of time to request amendment. However, after filing requests to admit the moving party in a case is entitled to move to narrow the issues based on the requests to admit, and that is all Appellee-Applicants are seeking to do here.

We address each of the proposed amended Statement of Questions in turn. The ruling on the motion as to Questions 1 through 4 was issued on November 4, 2002 and was faxed to the parties. It is repeated for the parties' convenience in the present order. The Court held oral argument on Question 5 on the first day of trial on November 6, 2002, and ruled in outline form

on the record. Section numbers in the format § 11.1.1 or § 6.1.10 or § 7.1.6 refer to the Zoning Ordinance; section numbers in the format § 28-7(a)(1)(G) refer to the Subdivision Ordinance.

Question 1 as originally stated never alleged that any of the other four criteria of § 11.1.1, that is, subsections(a), (b), (d) or (e) were unsatisfied, and Intervenors do not argue that it did. Accordingly, Appellee-Applicants' motion to amend Question 1 is GRANTED. However, Intervenors are correct that Appellee-Applicants' proposed restatement of the principal question in Question 1 does not clearly state the remaining issues. For the sake of clarity, Question 1 is hereby restated as follows:

1. Does the project fail to satisfy the " intent" criteria of § 11.1.1 by failing to satisfy either of the following subsections?

(a) Does the project preserve the natural and scenic qualities of open space? [§ 11.1.1(c)]

(b) Does the project achieve a high level of design quality and amenities? [§ 11.1.1(f)]

Similarly, Intervenors do not disagree with the subsections proposed to be deleted from Question 2. Accordingly, Appellee-Applicants' motion to amend Question 2 is GRANTED. However, Intervenors are correct that Appellee-Applicants' proposed restatement of the principal question in Question 2 does not clearly state the remaining issues. For the sake of clarity, Question 2 is hereby restated as follows:

2. Does the project fail to satisfy the Design Review Criteria of § 6.1.10 by failing to satisfy any of the following subsections?

   (a) Does the project relate buildings to the environment? [§ 6.1.10(a)]

   (b) Does the project preserve the landscape? [§ 6.1.10(b)]

   (c) Does the project provide for open space? [§ 6.1.10(c)]

   (d) Does the project protect Burlington' s heritage? [§ 6.1.10(*i*)]

   (e) Does the project consider the microclimate? [§ 6.1.10(j)]

Similarly, Intervenors do not disagree with the proposed content of Question 3. Accordingly, Appellee-Applicants' motion to amend Question 3 is GRANTED. However, Intervenors are correct that Appellee-Applicants' proposed restatement of the principal question in Question 3 does not clearly state the remaining issue. For the sake of clarity, the Court hereby states the restated Question 3 as follows:

3. Does the project fail to satisfy the site plan review criteria of § 7.1.6 by failing to satisfy subsection § 7.1.6(c); that is, does the proposed amount of landscaping and screening insure protection of and enhance the quality of the project and the adjacent properties?

Intervenors agree that the bond requirement is discretionary with the Board (and hence this Court in this de novo appeal). However, they are also correct that their agreement that it is discretionary does not eliminate original question 4 from the Statement of Questions. Appellee-Applicants' motion to amend the Statement of Questions by eliminating Question 4 is DENIED. Rather, Question 4 is hereby restated as follows:

4. Should Appellee-Applicants be required to post a performance bond, letter of credit or other security in an amount sufficient to cover the cost of installation of site improvements and to guarantee landscaping and plant survival, as provided in § 7.1.10, and, if so, in what amount?

Intervenors do not disagree with some of the subsections proposed to be deleted from Question 5, and do disagree with others. Intervenors are correct that Appellee-Applicants' proposed restatement of the principal question in Question 5 does not clearly state the remaining issues, and that certain subsections should not be deleted. Accordingly, Appellee-Applicants' motion to amend Question 5 is GRANTED in part and DENIED in part. Question 5 is hereby restated as follows:

5. Does the project fail to satisfy the Subdivision General Review Criteria of § 28-7, found in § 28-7(a), by failing to satisfy any of the following subsections?

(a) and (b) Will the project satisfy § 28-7(a)(2)? In connection with determining the project's compliance with § 28-7(a)(2), are the hydrologic and storm water management plan and subsurface system for storm water drainage satisfactory?

(c) [See Question 5(f)]

(d) Will the project have an undue adverse effect on the scenic or natural beauty of the area, aesthetics, historic sites, and rare or irreplaceable natural areas? [§ 28-7(a)(1)(G)]
In connection with determining the project's compliance with § 28-7(a)(1)(G): Does the project include development of a portion of a Class II wetlands/natural area? Is precise delineation of the boundary of the wetlands/natural area required? If the project does not include the development of a portion of a Class II wetland/natural area, will it have any negative impact on the wetland area? In particular[1], will the hydrologic and storm water management plan and subsurface system for storm water drainage adversely affect the wetland/natural area? Does the plan[2] preserve as many existing trees as possible? Are appropriate measures during construction proposed to avoid impact to the wetlands/natural area and any threatened or rare plant species found on the project site? Is the siting of two duplex units in direct conflict with the pattern of single-family residences along Venus Avenue and Meridian Street.

(e) Is the project in substantial conformance with the City's municipal development plan? [§ 28-7(a)(1)(I)]

In connection with determining the project's compliance with § 28-7(a)(1)(I): Does the project eliminate or significantly impact natural systems and resources, including water, soils, plant and animal life, and scenic areas? Does the project eliminate a 1.84 acre natural area of local significance and is the remaining portion thereof adequately protected? Does the inclusion of

duplex buildings destroy rather than conserve the single-family nature of existing neighborhoods?

(f) Will the project have an undue adverse effect on the present and projected park and recreation needs of the City? [§ 28-7(a)(1)(K)] In connection with determining the project's compliance with § 28-7(a)(1)(K), does the project eliminate a play area at the end of Venus Avenue and 1.84 acres of recreation space in the open space, and, if so, should the project include a plan for replacing either or both of these areas.

Done at Burlington, Vermont, this 7th day of November, 2002.

_____

Merideth Wright
Environmental Judge

**Footnotes**

[1] Note this sentence is transferred from original Question 5(b).

[2] The antecedent sentence which has been removed referred to the management plan for the conservation area, pointing up an ambiguity as to whether in this sentence the 'plan' referred to meant the plan for the project area as a whole, or the management plan. The Court ruled on the record that it will be interpreted most favorably to Intervenors, as they are restricted to the statement of questions as posed by Appellants, an will be taken to refer to meant the plan for the project area as a whole. Moreover, as no trees are proposed for removal in the conservation area subject to the management plan, this interpretation avoids creation of an illogical issue.